**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

BETTY REESE,                :

    Plaintiff,           :
                                        Case No. 3:07CV057

 vs.                       :
                                        District Judge Walter Herbert Rice

MICHAEL J. ASTRUE,          :   Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,    :

    Defendant.            :

---

**REPORT AND RECOMMENDATIONS[1]**

---

## I.   INTRODUCTION

Plaintiff Betty A. Reese suffers various health problems, including osteoarthritis, swelling of her hand and legs, and fluid on her knee, which began to interfere with her ability to work in 1993. (Tr. 79). She stopped working in December 2000 due to "hand swelling and cramping up into knots" and back and leg pain. (Tr. 79). She then sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB) on June 20, 2003 and applying for supplemental security income (SSI) on June 16, 2003.[2]

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Plaintiff previously filed applications for DIB and SSI in 2001. An Administrative Law Judge denied those applications in August 2003 by finding Plaintiff able to perform her past relevant work. *See* Tr. 296-305.

After various administrative proceedings, Administrative Law Judge (ALJ) Melvin A. Padilla denied Plaintiff's 2003 DIB and SSI applications based on his conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 37). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply to Defendant's Memorandum in Opposition (Doc #13), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision or, at a minimum, a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

**II.    FACTUAL BACKGROUND**

At the time of the ALJ's decision, Plaintiff's age (57) placed her in the category of a "person of advanced age" for purposes of resolving her DIB and SSI applications. *See* 20 C.F.R. §404.1563(e). She has a high school education plus two-and-one-half years of college. (Tr. 85, 443).

In her DIB application, Plaintiff asserted a disability onset date of April 19, 2003.

(Tr. 335). In her Statement of Errors, she explains that she was under a disability once she turned age fifty-five – if not earlier – and the ALJ erred in concluding otherwise.

The parties have provided detailed and informative descriptions of Plaintiffs' medical records supported with many specific citations to evidence of record. *See* Doc. #7 at 5; Doc. #9 at 8-11; Doc. #13 at 2-4. In light of this, and upon the Court's consideration of the record as a whole, there is no need to expand upon the parties' well-written factual descriptions. Still, some highlights of the medical evidence and Plaintiff's testimony during the ALJ's hearing will help frame further review.

Plaintiff has a history of lumbar degenerative disc disease, osteoarthritis in the left knee, and a history of mild shoulder tendonitis. She began experiencing lumbar problems following a work related injury in 1993. She was originally diagnosed with thoracic strain, lumbar strain, lumbosacral strain. (Tr. 628-29). In 2002, Plaintiff slipped at home and landed on her left knee. She was diagnosed with an acute contusion and soft tissue injury left knee. (Tr. 532). At that time, the physician noted that Plaintiff had a history degenerative joint disease ("DJD"). *Id.*

Plaintiff testified during the administrative hearing that she is disabled due to low back pain (Tr. 650-51), pain in her left side (Tr. 659, 664), left knee pain (Tr. 652), and high blood pressure. (Tr. 653). Plaintiff indicated that she has constant pain in the left side that goes down to her toes (Tr. 650) along with a very sharp pain in her left knee and some numbness all the time. (Tr. 651). Plaintiff estimated that she could walk for thirty minutes (Tr. 654), stand for thirty-to-forty-five minutes and sit for thirty minutes. (Tr.

655).  When she attempts to climb stairs, she experiences so much pain in the lower part of her left back that she must stop.  (Tr. 656).  At that time, she weighed 263 pounds and is five feet five inches tall.  (Tr. 661).

Plaintiff relies on the opinion of her treating physician, Gary Leroy, M.D. who answered a written narrative questionnaire and completed a residual functional capacity (RFC) questionnaire in November 2005 (Tr. 631-37).  Dr. Leroy listed Plaintiff's multiple medical problems as gastric reflux, chronic back pain due to an injury in 1993, osteoarthritis, bilateral carpal tunnel syndrome, constipation, diverticulitis, and hypertension.  (Tr. 631).  Dr. Leroy opined that Plaintiff could sit for four hours, stand for two hours, and walk for two hours in an eight-hour day.  (Tr. 634).  Dr. Leroy indicated that Plaintiff could not sustain such activities on full-time basis (8 hours per day, 40 hours per week).  She could occasionally lift 10 pounds, but could never lift twenty pounds. (Tr. 634).

According to Dr. Leroy, Plaintiff could not bend or twist but could use her right or left hand to reach above shoulder level on an occasional basis.  (Tr. 636).  She would need one rest period of twenty minutes each hour.  (Tr. 637).  Dr. Leroy believed that Plaintiff could perform part-time sedentary work, but she could not perform light work. (Tr. 635).

In October 2003, Damian M. Danopulos, M.D. examined Plaintiff for the Ohio Bureau of Disability Determinations (Ohio BDD).  He summarized his findings in part follows:

4

>   Lumbo/sacral spine and mid thoracic spine was painful by pressure. Straight leg raising was normal bilaterally. Lumbar spine motions were restricted and painful. Lumbar spine X-rays were unremarkable. She had a lumbar CT spine on February 5, 2003 which showed L5-S1 left disc herniation.
>
>   She gave a history of bilateral carpal tunnel syndrome which was diagnosed two years ago with an EMG. Grip strength was normal for a female and thenar muscles were not atrophic. The clinical impression was that if she suffers from a carpal tunnel syndrome this has to be of mild degree.
>
>   Left knee revealed painful and restricted motions. The clinical impression was rule out left knee arthritis.
>
>   Her complaints of effort-related shortness of breath are triggered from her morbid obesity. Lungs were clear to auscultation. Chest excursions were diminished but expiration was not prolonged. The clinical impression was restrictive lung disease triggered from her morbid obesity.
>
>   Her blood pressure was 165/100 mmHg. and poorly controlled.
>
>   She gave a history of diverticulosis which was diagnosed with a colonoscopy and she suffers from chronic constipation with bleeding external hemorrhoids.
>
>   The objective findings were: 1) lumbar spine mild arthritis; 2) history of bilateral carpal tunnel syndrome with normal grip strength, 3) rule out left knee arthritis, 4) restrictive lung disease triggering effort-related shortness of breath, being intensified by her morbid obesity, 5) poorly controlled hypertension, and 6) morbid obesity.
>
>   Her ability to do any work-related activities like walking, lifting, carrying is affected and restricted from her mild lumbar spine arthritis, the restrictive lung disease, and her left knee, rule out arthritis. Her hypertension is an additional problem.

(Tr. 445).

Later that same month Augusto L. Pangalangan, M.D. reviewed the record and

5

opined that Plaintiff could perform a restricted range of light work that was consistent with lifting and carrying twenty pounds occasionally and ten pounds more frequently. Dr. Pangalangan limited standing and walking to two hours in an eight-hour day. (Tr. 453). Dr. Pangalangan explained that Plaintiff was obese and has a history of low back pain, carpal tunnel syndrome, left knee pain, and poorly controlled hypertension. He noted, "chest PA dimensions were increased due to overweight. Lungs clear to auscultation. Cardiac exam is normal. Upper and lower extremities revealed full ROM [range of motion]. No specific hand or wrist pain existed." (Tr. 453-54). He also recognized that Plaintiff had decreased range of motion in her lumbar spine but her motor strength was normal in all extremities with no muscle atrophy and normal neurological exam, and her grip strength was normal. (Tr. 454). Dr. Pangalangan opined that Plaintiff's reported symptoms were partly credible but that her "allegations exceed clinical findings." (Tr. 456).

In March 2004, Robert E. Norris, M.D., a specialist in internal medicine, reviewed the record for the Ohio BDD and reached findings similar to Dr. Pangalangan's findings and he explained that he was adopting the RFC assessment found in the ALJ's prior (April 18, 2003) decision. (Tr. 474).

A vocational expert testified at the administrative hearing that Plaintiff's past work as a billing clerk was semi-skilled and sedentary. (Tr. 675). He also opined that a hypothetical person who could perform a residual functional capacity for a limited range of light work could perform such work. (Tr. 676).

### III. "DISABILITY" DEFINED AND ADMINISTRATIVE REVIEW

#### A. "Disability" and the Sequential Evaluation Procedure

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70. A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see also Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  *See* Tr. 23-31; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

      4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

      5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B. ALJ Padilla's Decision

In the present case the ALJ found at Step 2 that Plaintiff had the following severe impairments: "(1) lumbar degenerative disc disease, (2) osteoarthritis in the left knee, and (3) history of mild shoulder tendonitis." (Tr. 31). The ALJ determined at Step 3 that the severity of these impairments does not meet or equal one in the Listings. *Id*.

At Step 4 the ALJ found that Plaintiff had the RFC to perform a reduced range of light work.[3] The ALJ described his specific findings as follows:

> The claimant can lift up to ten pounds frequently and twenty pounds occasionally; she must have the option to alternate positions as needed; standing and walking are limited to no more than thirty minutes at a time; she must avoid crawling, climbing kneeling, and repetitive crouching, or stooping; or reaching above shoulder level with the left non-dominant arm; and she is limited to inside work in a temperature controlled environment.

(Tr. 37).

The ALJ next concluded that Plaintiff could perform her past relevant work as a

---

[3] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

8

billing clerk, based on the vocational expert's testimony. Consequently, the ALJ stopped his sequential evaluation at this point (Step 4), having reached his ultimate conclusion that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 33-37).

## IV. DISCUSSION

### A. Standards of Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). And the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as

they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

### B.     The Parties' Main Contentions

Plaintiff raises three main contentions:

1.   ALJ Padilla neglected to consider the claimant's Level III 'extreme' obesity in determining that Plaintiff did not meet or equal a listed impairment... Nor did he discuss her extreme obesity as a 'severe' impairment, either separately or in combination with Claimant's other impairments, in determining that she retained the RFC to return to her 'past relevant work....'

2.   Claimant's last position with American Ambulette, which the VE classified as 'billing clerk,' was not 'substantial gainful activity...' and, therefore, cannot properly be included as part of her past relevant work history....

3.   The vocational expert's testimony that plaintiff's 'past relevant work' ... history included work as a 'billing clerk' is unsupported by credible relevant evidence of record. Therefore, the Administrative Law Judge's ... reliance on that testimony to conclude that Claimant was able to return to her PRW is equally unfounded, and therefore cannot rise to the level of substantial evidence.

(Doc. #7 at 1-2).

The Commissioner rejects each of these contentions arguing: (1) ALJ Padilla properly considered Plaintiff's obesity, (2) Plaintiff's job as a billing clerk constituted substantial gainful work activity, and (3) the ALJ did not err in any way in determining that Plaintiff could perform that past relevant work as a billing clerk.

### C.     Analysis – Obesity

Step 2 of the sequential analysis – determining whether the claimant has a severe impairment – presents "a *de minimis* hurdle in the disability determination process.... Under the ... *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  The purpose of this very low evidentiary hurdle is to "screen out claims that are 'totally groundless.'" *Higgs*, 880 F.2d at 862 (quoting in part *Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 89-90 (6th Cir. 1985)).  The *Higgs* Court characterized the dismissal of a disability claim at Step 2 based on medical evidence alone as "exceptional."  880 F.2d at 863.

The ALJ's discussion at Step 2 of Plaintiff's Non-Impairments includes the following paragraph about obesity:

> The claimant is obese (272 pounds at approximately five feet five), however, there is no evidence that her obesity has significantly interfered with normal functional activity (see exam report by Dr. Danopulos for the BDD, who stated that she moved around the exam room freely, dressed and undressed normally, had normal gait, etc. – B-6F).  She had some limitation related to low back pain secondary to mild lumbar spine arthritis, but this is considered a 'severe' impairment and addressed in the residual functional capacity.

(Tr. 32). Plaintiff contends that the ALJ did not consider the severity of Plaintiff's obesity and overlooked the fact that her body mass index would fall in the "extreme" range of obesity under the National Institute of Health's clinical guidelines recognized by the Commissioner in Social Sec. Ruling 02-01p, 2000 WL 628049 at *2 (Sep. 12, 2002).

Ruling 02-01p describes, in part, the three levels of obesity set forth in National Institute of Health's clinical guidelines. Under those guidelines, Plaintiff's body mass index falls within Level III or "extreme" obesity. *See* 2000 WL 628049 at *2. Yet this alone does not help Plaintiff show error in the ALJ's decision because Ruling 02-01p further states:

> There is no specific level of weight or BMI [body mass index] that equates with a 'severe' or a 'not severe' impairment. Neither do the terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) establish whether a obesity is or is not a 'severe' impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

2000 WL 628049 at *2. In light of this, the ALJ did not err by overlooking the fact that Plaintiff suffered from extreme obesity. The issue instead is whether the ALJ conducted an individualized assessment of Plaintiff's obesity under the legal standards set by the Regulations and explained in Ruling 02-01p.

At Step 2 of the sequential evaluation, the ALJ mentioned Plaintiff's obesity in a conclusory manner without specifically discussing its impact on her musculoskeletal problems, such as her back problems. This was not small omission because Plaintiff's medical records contain some objective medical evidence – a report of a CT scan

indicating she has a herniated disc at L5-S1, Tr. 547 – in support of her claim to disabling back pain.

In addition, the ALJ relied on Dr. Danopulos' report by selecting only the remarks tending to show support his non-severe impairment finding at Step 2 – such as Dr. Danopulos' notes that Plaintiff moved freely in the exam room, could get on and off the exam table without difficulty, and had normal gait without ambulatory aids. *See* Tr. 443-44. But, the ALJ ignored other findings by Dr. Danopulos supporting the existence of Plaintiff's back pain – such as his notes stating, "Squatting and arising from squatting was triggering LS pain. LS spine motions were restricted and painful. Toes and heel gait was difficult...." (Tr. 444). An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *cf. Bowen v. Commissioner*, 478 F.3d 742, 747 (6th Cir. 2007)(ALJ erred by ignoring treating source's opinion); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002).

More importantly, the ALJ overlooked or ignored the fact that Dr. Danopulos' objective findings included both lumbar spine arthritis and morbid obesity and that he further believed Plaintiff's "ability to do any work-related activities like walking, lifting, carrying, is affected and restricted from her mild lumbar spine arthritis, the restrictive lung disease, and her left knee, rule out arthritis." (Tr. 446). This opinion tends to support the conclusion that Plaintiff's conditions – including her mild lumbar spine arthritis and obesity – had more than a minimal impact on her work abilities, and

13

therefore, Dr. Danopolus' report contains some evidence tending to show that Plaintiff's claim to a severe impairment due to obesity in combination with other impairment(s) was not totally groundless and should not have been weeded out by the ALJ under the *de minimis* standard applicable at Step 2. *See Higgs*, 880 F.2d at 862.

Continuing past Step 2, the Regulations also required the ALJ to consider the impact of all Plaintiff's impairments – both severe and non-severe – on her work abilities. *See* 20 C.F.R. §404.1545(a)(2). The Listings reinforce this Regulation with regard to obesity by mandating, "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, <u>including when assessing an individual's residual functional capacity</u>, adjudicator's must consider any additional and cumulative effects of obesity." Listing 1.00Q (emphasis added), 20 C.F.R. Part 404, Subpart P, Appendix 1. Thus the ALJ's failure to consider the impact Plaintiff's obesity has on her work abilities, her residual functional capacity, at Step 4 constituted error. *See id*.

The Commissioner contends that the ALJ did not err when evaluating Plaintiff's obesity because his assessment was based on the reports and opinions of Drs. Danopolus and Dr. Pangalangan. As to Dr. Danopulos, this argument lacks merit because the ALJ erred by selecting only certain statements by Dr. Danopulos that supported the ALJ's non-severe impairment finding, while overlooking Dr. Danopulos' opinion that supported the opposite conclusion at Step 2 – that Plaintiff's obesity had more than a minimal impact on her work abilities and was therefore not a totally groundless claim to a severe

14

impairment.

Accordingly, Plaintiff's first claimed error is well taken.[4]

## V.     REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above.  On remand, the ALJ should be directed to (1) re-evaluate Plaintiff's obesity has

---

[4] Because of this conclusion, and the resulting need to remand this case for further administrative proceedings, an in-depth analysis of Plaintiff's remaining challenges to the ALJ's decision at Step 4 is unwarranted.

on her work abilities as well as the combined impact her obesity and other impairments have on her work abilities as required by the Commissioner's Regulations; and (2) determine anew, by applying the required sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB or SSI.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Betty A. Reese was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

July 16, 2008

                                                    s/ Sharon L. Ovington
                                                         Sharon L. Ovington
                                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).